The next case this morning is 522-0161 People v. Dykes. Arguing for the defendant appellant is Elizabeth Boddy. Arguing for the state is Adam Trejo. Each side will have 10 minutes for the argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Good morning. Ms. Boddy, are you ready to... Well, we've lost... There we go. Sorry. That's all right. Are you ready to proceed? I am. Then go right ahead. Good morning. My name is Elizabeth Boddy from the State Appellate Defender's Office, and I represent Shelby Dykes. At issue in this case is whether trial counsel is ineffective for not moving to suppress the evidence seized from Shelby's truck on grounds that the canine sniff and subsequent interior search of her truck were unlawful. It is undisputed that the police lacked reasonable suspicion for that canine sniff, so the only issue on appeal is whether the canine sniff was incident to the traffic stop, and it wasn't. The videos confirm that the police unlawfully prolonged the duration of the stop to interrogate Shelby on matters wholly unrelated to the mission of the stop and to conduct that canine sniff, thereby rendering the canine sniff unlawful. The law is clear. A police officer cannot stop a driver for longer than necessary to investigate the traffic citation. A police officer cannot, absent reasonable suspicion, cannot detour from the mission of the traffic stop by conducting an on-scene investigation into other matters. A police officer cannot, absent reasonable suspicion, delay issuing a warning or citation until those unrelated inquiries are completed, but that's exactly what happened in this case. After stopping Shelby for driving without registration, Officer Hunt and Officer Wolf interrogated Shelby for at least four minutes on matters that had nothing to do with the traffic stop. For the first minute and a half, they questioned her about her whereabouts that day, where she worked, for whom she worked, what she was doing. They questioned her about her friend Roy, what his name was, how she knew him, whether she was friends with him or just working with him. At about a minute and 47 seconds into that interrogation, the mission of the stop was to resolve the traffic stop. He knew Shelby was driving on an expired license. He had already heard back from dispatch. He knew that she didn't have registration or insurance. In fact, at two minutes into the interrogation, he gave her an oral warning that she couldn't drive without registration. So at that point, the task tied to the original mission of the stop reasonably should have been completed. But rather than complete the mission of the stop, rather than give her that written warning or let her go, the police extended the stop. They prolonged the stop. They detoured from the mission of the stop by resuming their interrogation of Shelby. This time, they asked her about her prescription drug usage. They accused her of appearing to be nervous because her hands, which are inside her jacket pocket, apparently were clenched. Well, wouldn't that go to reasonable suspicion? There is no reasonable suspicion in this case. The state didn't dispute that there is. It hasn't argued that there's reasonable suspicion. Officer Hunt said that he conducted the canine sniff because Shelby was, quote, super hesitant when she answered his questions about Roy. At most, she was nervous, as any female detained in a squad car and interrogated by two officers for a routine traffic stop would be. And reviewing courts have repeatedly held that a driver's nervousness is not enough to give the police reasonable suspicion. There was no reasonable suspicion. So the basis that the state is giving, is it your contention that the basis being given by the state goes to the issue of reasonable suspicion, yet they've not argued reasonable suspicion? The state has not argued reasonable suspicion. Officer Hunt on the video said that he conducted the search, not incident, or conducted the canine sniff, not incident to the traffic stop, but because Shelby was super hesitant in her answers about her friend Roy. So he was admitting that this canine sniff was pretextual, that it wasn't part of this traffic stop. The state hasn't put forth an argument that the police have reasonable suspicion, nor could they. Because, as I said, a driver's nervousness has never given the police reasonable suspicion. You need more, and we don't have more. The police interrogated her for at least four minutes. And there's a reason why they asked these questions. They were stalling. They were hoping she would say something incriminating to give them a legal justification for searching her truck, and she didn't. And when she didn't, the police still didn't let her go. They still didn't write out a written warning. Instead, Officer Hunt stopped any attempt to resolve the mission of the traffic stop by getting out of his car, getting his dog out, and conducting the canine sniff. And during the canine sniff, Officer Wolfe didn't complete the mission of the stop. He and Shelby watched the entire thing. Shelby asked Officer Wolfe what basis Officer Hunt had to search her car. Officer Wolfe said, he's not searching it. Well, not yet, at least. Shelby asked him what the dog's behavior meant. Officer Wolfe said, we'll explain that to you later. Shelby was laughing when she thought the dog was innocently playing with Officer Hunt. So they watched this canine sniff. Officer Wolfe didn't complete the mission of the stop during the canine sniff. The canine sniff was unlawful because the authority for the stop ended minutes before, when Officer Hunt had all the information he needed to resolve the mission of the stop, which was about two minutes, at least, into the interrogation. But rather than diligently and expeditiously resolving the mission of the stop, police officers delayed the stop. They prolonged the stop. They conducted this interrogation and investigation into other crimes that added time to the stop, which means that the canine sniff was unlawful. And as I said, Officer Hunt essentially admitted this when he explained his reason for conducting that canine sniff. So there's no reasonable suspicion. And if the canine sniff added time to the stop, then it's unlawful. And the videos prove that the canine sniff added time to the stop because the officer's authority for the stop ended minutes before that canine sniff. Therefore, had this motion is meritorious, had counsel filed it, the trial court would have granted it and suppressed the evidence. So this court should find that counsel was ineffective for not moving to suppress the methamphetamine seized from Shelby's truck. Counsel, since you have just a bit of time, can you address the state's contention that on the second issue about that assessment waiver? Sure. So there is no evidence in this case rebutting the allegation that the payment of those fines would result in substantial hardship to Shelby and counsel is ineffective for not moving for an assessment waiver. The trial court specifically made a finding that Shelby was indigent when he appointed the public defender's office. And obviously, she was still indigent at the time of sentencing because she qualified for the appointment of my office. There, I know she was hoping to get a job and that's in the pre-sentence investigation report. She was hoping to get a job as a dental hygienist, but obviously, she couldn't get that job, according to the PSI, because of this case. She was, she may have been working online as an estate sales liquidator. We don't know how much she was working, how much she was making. And like I said, the fact is she was indigent before trial and still indigent after trial. At the time of sentencing. So at that moment, when she qualified for the appointment of my office, a real trial attorney would have at least filed a motion to have the court consider whether paying those fines would result in substantial hardship to someone who has had lost their job due to COVID and then lost it again because of this case. What is your argument that the mere fact of having a public defender appointed would therefore be a guaranteed waiver in every case? Well, in this case, the judge did make a finding that she was indigent based on her affidavit that she filed with the court when the public defender was appointed and the judge could have, indigent means if the payment of the fines would result in substantial hardship to the defendant. That's one of the definitions of indigent. And so, yes, I think her appointment, the fact that she qualified for the appointment of the public defender's office and the state public defender's office, as evidenced by the trial court's finding that she was indigent, showed that there was an argument that the repayment of the fines would result in substantial hardship to her and trial counsel, any reasonable attorney would have at least filed a motion to have the judge consider waiving those assessments. Any other questions, Justice Moore, Justice McHaney? No further questions. All right. Well, thank you, counsel. Obviously, you'll be given your time for rebuttal. Mr. Trejo, go right ahead. May I please the court, counsel, Adam Trejo on behalf of the people of the state of Illinois. Now, opposing counsel mentioned that the state didn't argue that the officers didn't have reasonable suspicion to create a canine sniff. Well, I think it's important to note the lens where we're at. The defendant never filed a motion to suppress. They never alleged that there was no reasonable suspicion or probable cause for the stop. They never alleged any infraction on behalf of the officers. So, of course, there was no argument. An appeal defendant is arguing that counsel was ineffective for not filing this motion to suppress. The record is severely underdeveloped, and I'd really like to take this opportunity to highlight the ways it is inadequate to absorb the issue that defendant brings on appeal. In support of our argument, defendant relies on footage that was never admitted at trial. In this case, at trial, the state introduced a 21-second clip entitled People's Exhibit 3, and it was a short exchange after the stop and after the search. The 21-second clip depicts the defendant and one of the officers, and the officer asks, do you use methamphetamine? And she said, yes. And then at trial, defendant said that she misunderstood the officer's question that she thought that the officer said, do you use PEP? And, of course, I reviewed the recording, and it clearly states what the officer asked the defendant. Everything else on the disc, everything else remaining was never admitted into evidence at trial, and for some reason, it wasn't redacted for some reason. Another clip entitled Exterior Search was also included on People's Exhibit 3, and on And it's the state's argument that it's completely improper for this court to consider footage that was never admitted into evidence below. Furthermore, the clips that are available do not answer the question, did the officers in this case prolong the stop? For example, the traffic stop is not shown on the video. The initial interaction between the deputy and the defendant is not shown. The clip begins and with the defendant and the deputy entering the police vehicle. So we don't even know the length it took for that interaction to happen. There's also no timestamps on the video. The videos contain multiple gaps. I cannot say for certain the record doesn't reveal why there's gaps, why it blacks out. We don't know. We don't know that length. Unappealed defendant is pretty certain the length of this interaction, but we don't know what was said. We don't know what other suspicious activity the defendant was displaying before the officers asked the defendant about her prescription or noticed her hands moving. I'm going to stop you there, counsel. Isn't that the reason that an effective counsel would have filed a motion to suppress, to flush those issues out for the trial court to decide? Well, I believe counsel had the entire footage and decided for patrol strategy not to pursue that motion. But remember, Strickland, there's two prongs. So say for assuming arguendo, the first prong is satisfied. The second prong is prejudice, and prejudice cannot be based on speculation and assumptions. And the state really hammers that second prong fully in its brief. It's pure speculation given that there's no timestamps. And there's two videos because there's no timestamps or a date. How do you know how they correlate with one another? Did it quickly occur within one of the gaps? We don't know. Again, the crux of the defendant's argument is based on pure speculation and assumptions on what those gaps may or may not contain. The exterior video and the interior video doesn't reveal if the officer had a canine unit with him. The only reason why we know that is because of the preliminary hearing. But again, that's not testimony at trial. That information wasn't solicited because it was never contested. But thankfully, we know because of the preliminary hearing, the deputy was a canine officer and no time was used to ask for backup to bring that canine unit. But even so, based on the footage that is available for viewing, it does not support defendant's claim that the officers prolonged the mission of the stop. I reviewed the video. And yes, there is a conversation between the deputy and the defendant. But even accepting that the questioning, if it's unrelated to the mission, asking questions unrelated to the purpose of the seizure, is not unlawful so long as the questioning does not extend the time the defendant is obtained. And when you review the video, the deputy is typing on his computer. He's checking for the defendant's registration. The defendant didn't provide insurance. He tells her that her license has been revoked or suspended. And he also tells her that the vehicle was not reported stolen. During this conversation, he's typing on his computer. He's more preoccupied with what's in front of him to check this information. And in the end, he decides to issue her warnings, which the state posits that they were written warnings. And the whole interaction before there's a gap before she's Mirandized is three minutes and 40 seconds. The state is unaware of any case that holds that a three minute and 40 second interaction with the defendant is an unreasonably long stop. What we have here, it's not a lot of time. At the end of their brief conversation, the deputy asked Officer Wook to come step on his side of the police vehicle. He takes his position, and he immediately starts to type out the warnings to give to the defendant. And when that happens, the video turns black again for an unknown length period of time. In regards to the exterior of the video- To stop you, again, there are two points. To that particular point, again, would that not have been properly brought to the trial court's attention? So then the trial court could heard arguments as to why there was a gap, and then the trial court could decide, well, for instance, that the trial court hold that against the state for not providing that if there was a reason or excuse for it to be blacked out. I mean, these are all issues that the trial court could have heard, ruled on, and then brought up later. Now, to the second point, as far as the- If I'm understanding, this young lady was taken out of her vehicle, placed into the squad car, and then was questioned regarding other things than her registration, insurance, and license, correct? Her employment, yes. You asked two questions. I know I did. I apologize. So is your second question complete? Yes. Okay, as to the first point, I think there's an assumption that trial counsel received this redacted version. There's nothing in the record to show that counsel did not have the unredacted version. Again, prejudice, you have to make a lot of assumptions. You have to make the assumption that counsel did have this version that we have on appeal that was never admitted into evidence. That's the first assumption. In regards to your second question, I'd like to point out Sanchez, which the state cites in its brief, even accepting that questions related to her employment, where she was going, it's not unlawful so long as the questioning does not extend the time. Here, the deputy was also on his computer and speaking with her. It wasn't like he stopped and decided to have a separate conversation. How's your day been? What's your Zodiac sign? That's not what happened. He was on his computer typing the whole way and updating her along the way. By the way, the vehicle has not been reported stolen. By the way, your license has been revoked. And I'm running out of time and the state relies on its full brief for the first issue. But just quickly within these 15 seconds, as to the second issue, the state cites Baker, which the fourth district rejected the defendant's contention that she was indigent because a public defender was appointed. Baker rejected that. Absent more, it's insufficient to establish prejudice under Strickland. And for those reasons stated at or argument and within the state's brief, the people of the state of Illinois respectfully request that this honorable court affirm defendants conviction and sentence. Thank you. Thank you, counsel. Before we let Mr. Trajo go, Justice McKenna, Justice Moore, do you have any questions? No questions. All right. Thank you. Miss Bonney, go right ahead with any rebuttal. As to the video, I too watched it multiple times and Officer Hunt is not on the computer the entire time he's questioning Shelby. He was not working on the computer when he asked Shelby where sales by Dale was located. He was not working on his computer when he asked Shelby whether she was meeting Roy or just friends with him or working with him. He wasn't working on the computer when Officer Wolf asked her what if she took any prescription meds on a daily basis. He wasn't working on the computer when he asked her why she was nervous or when Officer Wolf told her that she looked nervous. He wasn't working on the computer when he asked her about her son and her son's age. He wasn't working on the computer when he asked why she got off the highway if she was heading back to Monticello. He wasn't working on the computer when he got out of his car, got the dog and performed the canine step and neither was Officer Wolf. So no, he wasn't working on the computer the entire time. The state says this stop was only 30 minutes and 40 seconds and that was a reasonable stop. The length of the detention doesn't matter. What matters is if the police prolong the stop beyond the time reasonably required to complete the mission of the stop and they did. And in pulling, the appellate court said at four minutes, police officer had all the information he needed to resolve the mission of the stop. That stop was unlawful. In Casino, the officer had all the information he needed after one minute. That stop wasn't lawful. And we know that actually this stop was longer than three minutes and 40 seconds because obviously it took some time for the officer to pull Shelby over, get her information and then bring her to the squad car. And in Sanchez, state said Sanchez just now, but in Sanchez, what's critically different between that case and our case is that in that case, the cop had not yet heard back from dispatch when the canine sniff was performed. Officer Wolf heard back within two minutes, at least two minutes before the canine sniff. He had all the information he needed at the latest at that two minute mark, yet he extended and prolonged and deviated from the stop by resuming his interrogation about Shelby about matters that had nothing to do with whether or not she had registration and by getting the dog out and performing the canine sniff. As to the record, what matters is that this is part of the record on appeal. It's part of the court file. Part of it was played. It's a state exhibit. It was given to the defense attorney in discovery. It was stipulated to at trial. So it's part of the appellate record, which means that it can be the basis of an ineffective assistance of counsel argument. Quite frankly, I would be ineffective if I didn't argue counsel is ineffective for not using this video to challenge the admissibility of the methamphetamine. There are absolutely no assumptions to make in this case. We know everything we need to know to resolve this claim because fortunately, it was recorded. Yes, the initial stop wasn't recorded, but Officer Hunt testified to what happened during that stop at trial, and actually so did Officer Wolf at the preliminary hearing. The interrogation was recorded. Yes, there was that one gap at the beginning, but that doesn't matter. If anything, it shows that the interrogation was longer than the three minutes and 49 seconds. There are no assumptions to make. The state says maybe Shelly said something in one of those unrecorded portions that would have given the police real suspicion. We know she didn't because Officer Hunt told us why he searched the car. If she said something incriminating, he wouldn't have said, I got the dog out because you're super hesitant about your friend, Roy. So we know she didn't say anything or do anything to give the police reasonable suspicion. We know why the police performed that canine zip. They were stalling. They were hoping she would do something. They were conducting this on-scene investigation, which is unlawful. You can't do it. The police cannot delay issuing a ticket or warning to conduct this on-scene investigation like they did here. They can't stop a driver for longer than necessary. They can't detour from the mission of a stop by conducting this on-scene interrogation, which is exactly what happened in this case. Because the canine sniff was not incident to the search and at a time or incident to the traffic stop, but added time to it, it's unlawful. As to the second argument, this case is different from Baker because in Baker, there was evidence rebutting the claim that the defendant was indigent. Here, we don't have any evidence rebutting her indigent status. We know she was deemed indigent by the trial judge, and there's nothing in the record to rebut that. There's no evidence to rebut that she was, in fact, indigent. So therefore, I would ask that you find counsel ineffective for not moving for the assessment the methamphetamine seized from Shelby's truck. Thank you, counsel. Before we complete today, Justice McKinney or Justice Moore, do you have any final questions on this matter? No questions. No questions. Well, obviously, counsel, we will take the matter under advisement. We will issue an order in due course. I believe this concludes our docket today as far as oral arguments are concerned. So we will stand in recess until tomorrow morning at 9 o'clock.